FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 19, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| DALE B., | No. 4:17-cv-05130-MKD |
|              Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S |
|    vs. | MOTION FOR SUMMARY |
| | JUDGMENT AND GRANTING |
| COMMISSIONER OF SOCIAL | DEFENDANT'S MOTION FOR |
| SECURITY, | SUMMARY JUDGMENT |
|              Defendant. | |
| | ECF Nos. 18, 19 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 18, 19. The parties consented to proceed before a magistrate judge. ECF No. 9. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 18, and grants Defendant's Motion, ECF No. 19.

ORDER - 1

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe as or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On November 13, 2013, Plaintiff applied for Title II disability insurance benefits, and on December 5, 2013, he applied for Title XVI supplemental security income benefits, both alleging a disability onset date of January 1, 2008. Tr. 204-14. The applications were denied initially, Tr. 87-114, and on reconsideration, Tr. 115-146. Plaintiff appeared at a hearing before an administrative law judge (ALJ) on February 4, 2016. Tr. 45-86. On May 10, 2016, the ALJ denied Plaintiff's claim. Tr. 20-39.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 1, 2008. Tr. 24. At step

two, the ALJ found Plaintiff did not have any medically determinable impairment, severe or otherwise, before November 29, 2010, as there were no medical records in evidence predating that date.  Also at step two, the ALJ found that Plaintiff has the following severe impairments after November 29, 2010:  obesity, bilateral knee osteoarthritis, mild cognitive impairment versus early dementia, anxiety disorder not otherwise specified, major depressive disorder, and substance use disorder.  Tr. 24-27.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 27-28.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] can occasionally balance, stop, kneel and crouch.
> [Plaintiff] should not crawl or climb ladders, ropes, scaffolds, ramps
> or stairs.  He should avoid concentrated exposure to extreme cold and
> heat, vibration, pulmonary irritants such as fumes, odors, dusts, gases
> and poor ventilation and hazards.  [Plaintiff] can perform simple,
> routine tasks and follow short, simple instructions.  He can do work
> that needs little or no judgment and can perform simple duties that can
> be learned on the job in a short period.  [Plaintiff] requires a work
> environment that is predictable and with few work setting changes. He
> should not deal with the general public as in a sales position or where
> the general public is frequently encountered as an essential element of
> the work process.  Incidental contact of a superficial nature with the
> general public is not precluded.

Tr. 28.

At step four, the ALJ found Plaintiff is unable to perform any past relevant work. Tr. 36. At step five, the ALJ found there are jobs that exist in significant numbers in the national economy that Plaintiff could perform before December 25, 2015 (the date Plaintiff's age category changed), such as, production assembler, packing line worker, cleaner housekeeping, and outside deliverer. Tr. 37. Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of January 1, 2008, through December 24, 2015. Tr. 38. But when Plaintiff's age category changed on December 25, 2015, the ALJ determined there were no jobs that exist in significant numbers in the national economy that Plaintiff can perform given his age, education, work experience, and residual functional capacity. *Id.* The ALJ therefore determined that Plaintiff became disabled on December 25, 2015. *Id.*

On June 27, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

ORDER - 8

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ properly evaluated Plaintiff's symptom complaints; and

3.  Whether the ALJ conducted a proper step five analysis.

ECF No. 18 at 8.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ improperly rejected the opinions of Nora Marks, Ph.D., Cheryl Hipolito, M.D., Debra Bariletti, ARNP, and Courtney Hunter, ARNP. ECF No. 18 at 9-15. There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." 20 C.F.R. § 404.1527 (2012); *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). "Other sources" include nurse practitioners. 20 C.F.R. §§ 404.1513(d), 404.1594.[1]

_____

[1] The Court generally applies the law in effect at the time of the ALJ's decision. *See Garrett ex. rel. Moore v. Barnhart*, 366 F.3d 643, 647 (9th Cir. 2004). Revised versions of these regulations took effect on March 27, 2017, and apply to disability claims filed on or after that date. *See* 82 Fed. Reg. 5844 (Mar. 27,

However, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

### 1. Dr. Marks

Dr. Marks performed psychological evaluations of Plaintiff on January 30, 2014, Tr. 533-37, and February 12, 2014, Tr. 422-30.

#### a. January 30, 2014 opinion

On January 30, 2014, Dr. Marks diagnosed Plaintiff with a moderate level of anxiety, severe level of depression, and failing health and opined that Plaintiff was markedly limited in the following activities: performing activities within a schedule, maintaining regular attendance, completing a normal work day and week

---

2017); 20 C.F.R. § 416.920c. Because Plaintiff's claims were filed in 2013, the revised regulations do not apply.

ORDER - 11

without interruptions from psychologically based symptoms, and independently setting realistic goals and plans. Tr. 533-37.

The ALJ assigned this opinion little to no weight. Tr. 33. Because Dr. Marks' opinion was contradicted by the opinions of Dr. Cynthia Collingwood, Tr. 122-25, and Dr. Michael Brown, Tr. 106-08, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Marks' opinion. *See Bayliss*, 427 F.3d at 1216.[2]

First, the ALJ rejected Dr. Marks' opinion because she did not provide rationale in support of the limitations she opined. Tr. 33. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 F.3d at 1228. While the evaluation report lists the reasons given by Plaintiff as to why he is unable to work due to his anxiety and depression, Dr. Marks failed to provide objective reasons explaining why Plaintiff's anxiety and depression cause him to be markedly

---

[2] In challenging the ALJ's evaluation of the January 30, 2014 opinion, Plaintiff cites to records and information from the February 12, 2014 evaluation, which did not exist when the January 30, 2014 was conducted. ECF No. 18 at 10-11.

ORDER - 12

limited in the three identified areas. Tr. 533-37. This is a specific and legitimate

reason to discount Dr. Marks' opinion.

Second, the ALJ rejected Dr. Marks' opinion because she did not review any

of the treatment records. Tr. 33 (citing Tr. 533 ("Records reviewed: None")). The

extent to which a medical source is "familiar with the other information in [the

claimant's] case record" is relevant in assessing the weight of that source's medical

opinion. 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Dr. Marks' report indicated

that she reviewed no records. Tr. 533. This was a specific and legitimate reason to

give less weight to Dr. Marks' opinion than those of the state agency physicians,

Dr. Brown and Dr. Collingwood, who reviewed the medical records received at the

time of their 2014 opinions. Tr. 89-114 (Brown, dated February 20, 2014); Tr.

117-46 (Collingwood, dated May 9, 2014).

Plaintiff asserts Dr. Marks did provide extensive support for her opined

limitations. ECF No. 18 at 10 (citing Tr. 423-25). However, Plaintiff cites to the

February 12, 2014 report, Tr. 422-30, which did not exist when the January 30,

2014 opinion was prepared. Dr. Marks indicawheted she reviewed no records

before preparing the January 30, 2014 opinion. Tr. 533-37. From the record, it

appears that Dr. Marks did not administer the Trail Making Test, Clock Drawing

Test, and the Wechsler Memory Scale-IV until the February 12, 2014 evaluation.

Tr. 422-30. As a result, those tests cannot support an opinion rendered on January

ORDER - 13

30, 2014.  Moreover, the test results cited by Plaintiff are not mentioned in the

January 30, 2014 opinion.

Third, the ALJ rejected the opinion because other medical records indicated Plaintiff endorsed milder symptoms to other treatment providers than those identified by Dr. Marks.  Tr. 33.  An ALJ may discredit a physician's opinion that is unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec. Adm.*, 359 F.3d 1190, 1195 (9th Cir. 2004).  The ALJ noted that Plaintiff's complaint of severe depression was not supported by the "therapy notes generated around the same time" showing that Plaintiff had milder symptoms than he reported to Dr. Marks.  Tr. 33 (citing Tr. 573-84).  The cited therapy notes and attendant Global Assessment Functioning (GAF) scores undermine the severity of the symptoms that he reported to Dr. Marks.  Tr. 573-84 (noting that Plaintiff was sad and depressed but that he was cooperative, rationale, calm, relaxed, and oriented without any suicidal ideation, with GAF scores of 75); *see also* Tr. 457-63 (noting that Plaintiff's mood was appropriate and thought process rationale).

However, Plaintiff contends that, because in a later section of his decision the ALJ discounted the use of GAF scores when evaluating Plaintiff's disability, the ALJ improperly discounted Dr. Marks' opinion on the grounds that her opinion was inconsistent with GAF scores during that period.  ECF Nos. 18 at 12; 20 at 2. The Court does not find any inconsistency in the ALJ's use, or non-use of, GAF

scores.  In regards to Dr. Marks, the ALJ mentioned the GAF reports merely to

highlight that other medical records indicated that Plaintiff endorsed milder

symptoms to other treatment providers than those identified by Dr. Marks.  Tr. 33.

Whereas in assigning limited weight to Nurse Practitioner Cole's GAF scores, the

ALJ recognized that, while a GAF score may help guide an ALJ's decision, an

ALJ is not bound to consider a GAF score.[3]  The Commissioner has explicitly

disavowed use of GAF scores as indicators of disability.  65 Fed. Reg. 50746-01,

50765 (Aug. 21, 2000) ("The GAF scale . . . does not have a direct correlation to

the severity requirements in our mental disorder listing.").  Moreover, the GAF

scale is no longer included in the DSM–V.  *See* Am. Psychiatric Ass'n, *Diagnostic*

*& Statistical Manual of Mental Disorders* at 16 (5th ed. 2013) ("It was

recommended that the GAF be dropped from the DSM-V for several reasons,

including its conceptual lack of clarity (i.e., including symptoms, suicide risk and

disabilities in its descriptors) and (questionable psychometrics in routine

_____

[3] The GAF Scale measures "the clinician's judgment of the individual's overall

level of functioning" as to "psychological, social, and occupational functioning,"

but not "impairment in functioning due to physical (or environmental) limitations."

Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders, at 32

(4th ed. Text Revision 2000); *see Morgan,* 169 F.3d at 598, n.1.

practice.")).  There is no inconsistency in the ALJ's consideration of Plaintiff's GAF scores.  Even if the ALJ erred in inconsistently treating Plaintiff's GAF scores, this error was harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, to discredit Dr. Marks' opinion.  *See Molina,* 674 F.3d at 1115.

Finally, the ALJ rejected Dr. Marks' opinion because she relied in part on Plaintiff's unreliable self-report.  Tr. 33.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Se.c Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  However, when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.  *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014); *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-200 (9th Cir. 2008).  Here, the Commissioner conceded that the ALJ improperly relied on this factor.  ECF No. 19 at 7-8.  Notwithstanding this concession, any error is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, to discredit Dr. Marks' opinion.  *See Molina,* 674 F.3d at 1115.

b. February 12, 2014 opinion

On February 12, 2014, Dr. Marks conducted a psychological evaluation and diagnosed Plaintiff with moderate anxiety disorder, dementia, and recurrent severe major depressive disorder without psychotic symptoms. Tr. 422-30. Dr. Marks opined that Plaintiff was moderately impaired in his ability to understand and remember complex instructions and make judgments on complex work-related decisions and markedly impaired in the ability to carry out complex instructions. Tr. 428.

The ALJ assigned little weight to Dr. Marks' February 12, 2014 opinion. Tr. 33-34. Because Dr. Marks' opinion was contradicted by the opinions of Dr. Collingwood, Tr. 122-25, and Dr. Brown, Tr. 106-08, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Marks' opinion. *See Bayliss*, 427 F.3d at 1216.

First, the ALJ rejected Dr. Marks' opinion because she did not conduct a physical examination and is not qualified, as a psychologist, to comment on Plaintiff's physical medical conditions. This is a legitimate and specific reason to reject Dr. Mark's opinion regarding any physical limitations. *See Brosnahan v. Barnhart*, 336 F.3d 671, 676 (8th Cir. 2003); *Bollinger v. Barnhart*, 178 Fed. App'x 745, 746 n.1 (9th Cir. 2006). Moreover, Plaintiff failed to challenge this reason, thus, any challenge is waived and the Court may decline to review it. *See*

1    *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008)

2    (determining the court may decline to address the merits of issues not argued with

3    specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (ruling that the court

4    may not consider on appeal issues not "specifically and distinctly argued" in the

5    party's opening brief).

6           Second, the ALJ rejected Dr. Marks' opinion because it was not consistent

7    with the medical record as a whole.  An ALJ may discredit a physician's opinion if

8    it is not consistent with the record or there is inadequate evidence supporting the

9    opinion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007).  The ALJ

10   specifically noted that Plaintiff performed poorly on the Wechsler Memory Scale

11   tests, but the ALJ found that several other evaluations established that Plaintiff had

12   better cognitive functioning that that assessed by Dr. Marks.  *See, e.g*., Tr. 554

13   (November 25, 2014: "MMSE normal; no cognitive impairment"); Tr. 630

14   (February 24, 2015: "Memory – mildly impaired short term memory" and

15   "[o]rientated to time, place, person & situation. Appropriate mood and affect"); Tr.

16   701 (December 10, 2015: "Registers 3/3 and recalls 2/3 items, 3/3 with clue. Spells

17   WORLD backwards. Oriented to year, Month, date, copied a pattern").  Plaintiff

18   failed to challenge this reason cited by the ALJ, thus, any challenge is waived.  *See*

19   *Carmickle*, 533 F.3d at 1161 n.2; *Kim*, 154 F.3d at 1000.  Here, the ALJ provided

20

specific and legitimate reasons supported by substantial evidence to discount Dr.

Marks' February 2014 opinion.

2. *Dr. Hipolito*

Dr. Hipolito treated Plaintiff between April and October 2015. Tr. 634-80.

She evaluated Plaintiff on September 23, 2015,[4] diagnosed Plaintiff with

osteoarthritis in the knee joint and severe carpal tunnel syndrome in his right hand,

and opined that Plaintiff could not stand for more than twenty minutes due to knee

pain and would be unable to complete forms due to hand pain. Tr. 623-25. Dr.

Hipolito opined that the conditions were likely to last for months and that Plaintiff

was limited to sedentary work. Tr. 624.

On October 20, 2015, Dr. Hipolito wrote a letter to the Stage agency to

support Plaintiff's state-assistance application, stating that Plaintiff had significant

osteoarthritis on multiple joints and bilateral carpal tunnel syndrome, which greatly

affected his ability to work. Tr. 681.

The ALJ assigned little to no weight to these opinions. Tr. 35. Because Dr.

Hipolito's opinions were contradicted by the opinion of Dr. Robert Hoskins, Tr.

---

[4] The ALJ identified Dr. Hipolito's opinion as April 23, 2015. Tr. 35. However,

Dr. Hipoliti's opinion was issued on September 23, 2015, not April 23, 2015. Tr.

623-25.

125-27, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Hipolito's opinions.  *See Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Hipolito's opinions because they were inconsistent with the medical evidence.  Tr. 35.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007). An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record.  20 C.F.R. § 416.927(c)(4) ("[T]he more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

As to Plaintiff's knees, the ALJ highlighted that imaging of the knees was not consistent with Dr. Hipolito's sedentary-work limitation.  Tr. 703-04 (showing mild medial joint space narrowing and bilateral knee degenerative joint disease, with recommended treatment including physical therapy, anti-inflammatory, and possible injection); Tr. 707-08 (showing mild medial and moderate patellofemoral joint space degenerative spurring of right knee and persistent spurring along the

lateral margin of the patella). The ALJ's conclusion regarding the medical evidence related to Plaintiff's knees is supported by substantial evidence.

As to Plaintiff's carpal tunnel syndrome, the ALJ concluded that the electrodiagnostic testing showed only mild carpal tunnel syndrome. Tr. 35. However, while the electrodiagnostic testing reflected mild carpal tunnel syndrome, the doctor conducting this testing—Dr. Fei Pan—noted it was an abnormal study and recommended clinical correlation. Tr. 695. The reviewing orthopedic surgeon, Dr. Joshua Bales, diagnosed Plaintiff with bilateral carpal tunnel syndrome and cubital tunnel syndrome and opined that it was moderate to severe. Tr. 705-06. The Court finds the ALJ erred in rejecting Dr. Hipolito's opinion in regard to Plaintiff's carpal tunnel syndrome, as her opinion was consistent with the opinions of Dr. Pan and Dr. Bales. *See Holohan*, 246 F.3d at 1201-02; *Murillo v. Colvin*, No. CV-11-9670-MAN, 2013 WL 1296428 (C.D. Cal. March 27, 2013); *see also* 20 C.F.R. §§ 404.1527(c)(5) & 416.927(c)(5).

However, the ALJ's decision to discount Dr. Hipolito's opinion about Plaintiff's carpal tunnel syndrome constitutes harmless legal error. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination."). This is because, as the ALJ recognized, Dr. Hipolito also opined that Plaintiff was limited to sedentary work for *six* months

ORDER - 21

because of his carpal tunnel syndrome and knee pain.  Tr. 35, 624.  Dr. Hipolito

did not consider Plaintiff's medical impairments to be of such severity as to last

twelve months or longer.  Tr. 624.  A qualifying impairment must last for a

continuous period of at least twelve months.  20 C.F.R. § 404.1509; *Montijo v.*

*Sec'y of Health & Human Servs.*, 729 F.2d 599, 601 (9th Cir. 1984).  Because Dr.

Hipolito opined that Plaintiff's ability to work would be impacted for only six

months, the ALJ had a legitimate and specific reason to discount Dr. Hipolito's

opinions.

Plaintiff contends the ALJ failed to appreciate that Plaintiff's carpal tunnel

existed many months before Dr. Hipolito's six-month estimate in September 2015

and thus the combined time that Plaintiff suffered from carpal tunnel exceeded

twelve months.  However, Dr. Bales and Dr. Pan also considered Plaintiff's carpal

tunnel to be not a permanent injury, as both considered Plaintiff's carpal tunnel to

be treatable through surgery, Tr. 699, 701, 706 ("[B]oth carpal tunnel and cubital

tunnel syndrome can be released surgically.").  *See Estes v. Barnhart*, 275 F.3d

722, 725 (8th Cir. 2002) ("An impairment which can be controlled by

treatment . . . is not considered disabling.").

Finally, the ALJ rejected Dr. Hipolito's October 20, 2015 opinion because it

was inadequately explained and supported.  Tr. 35.  The ALJ need not accept a

treating physician's opinion if it is brief, conclusory and inadequately supported by

ORDER - 22

clinical findings.  *Bray,* 554 F.3d at 1228.  Dr. Hipolito's October 20, 2015 opinion did not contain any explanation as to why she opined that Plaintiff had significant osteoarthritis on multiple joints and bilateral carpal tunnel syndrome, which greatly affected his ability to work.  Tr. 681.

While the ALJ erred in discounting Dr. Hipolito's opinion relating to Plaintiff's carpal tunnel, this error was harmless.  The ALJ identified other specific and legitimate reasons for discounting Dr. Hipolito's opinions, which were supported by substantial evidence.  *Molina,* 674 F.3d at 1115.

*3. Nurse Bariletti*

Plaintiff contends the ALJ improperly rejected Nurse Bariletti's 2010 and 2014 opinions.

a. November 29, 2010 opinion

Nurse Bariletti examined Plaintiff on November 29, 2010, and completed a State-agency form on December 22, 2010.  Tr. 290-93.  Nurse Bariletti diagnosed Plaintiff with a number of conditions, including, testicular pain, depression, anxiety, left knee pain, and left leg venous insufficiency.  *Id.*  Nurse Bariletti opined that Plaintiff could stand for up to two hours in an eight-hour work day, could sit for up to six hours in an eight-hour work day, lift 10 pounds occasionally, and lift 10 pounds frequently, Tr. 290.  She further opined that Plaintiff was limited, for an uncertain length of time, to sedentary work.  Tr. 293.

The ALJ assigned no weight to this opinion. Tr. 33. An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill*, 12 F.3d at 918.

First, the ALJ rejected Nurse Bariletti's opinion because she is not an acceptable medical source as that term was defined when Plaintiff filed his claim. *See* 82 Fed. Reg. 5844 (Mar. 27, 2017); 20 C.F.R. § 416.920c. The ALJ is correct that Nurse Bariletti's opinion is entitled to less weight than that of an acceptable medical source. 20 C.F.R. §§ 404.1527, 416.927 (2012); *Gomez*, 74 F.3d at 970-71. However, her credentials are not a germane reason for rejecting the opinion because ALJs are directed to consider medical evidence from all sources. 20 C.F.R. §§ 404.1513(e)(2), 416.913(e)(2) (2013).

Second, the ALJ rejected Nurse Bariletti's opinion because it was only the first time she examined Plaintiff. Tr. 33. The number of visits a claimant has made to a particular provider is a relevant factor in assigning weight to an opinion. 20 C.F.R. § 416.927(c). However, the fact that this evaluator examined Plaintiff one time is not a legally sufficient basis for rejecting the opinion. The regulations direct that all opinions, including the opinions of examining providers, should be considered. 20 C.F.R. § 416.927(b), (c). Moreover, here, the ALJ rejected Nurse Bariletti's opinion in favor of the state agency reviewing physician Dr. Hoskins,

ORDER - 24

who did not examine Plaintiff.  This was not a germane reason to reject Nurse Bariletti's opinion.

Third, the ALJ rejected Nurse Bariletti's opinion because it was inconsistent with the medical record.  Inconsistency with the medical evidence is a germane reason to discredit other source statements.  *Bayliss*, 427 F.3d at 1218; *Batson*, 359 F.3d at 1195 (permitting an ALJ to discredit an opinion that is unsupported by the record).  For example, the ALJ concluded that the sedentary-work restriction was inconsistent with imaging of Plaintiff's left leg and knee condition.  Tr. 33.  The sedentary-work restriction is directly contradicted by the x-ray taken of Plaintiff's left knee on November 30, 2010, Tr. 447-50, which showed the knee's condition was within normal limits.  Tr. 447.  This was a germane reason to reject weight to Nurse Bariletti's opinion.

Fourth, the ALJ rejected Nurse Bariletti's opinion because it was internally inconsistent and unsupported.  Tr. 33. An ALJ may reject opinions that are internally inconsistent.  *Nguyen*, 100 F.3d at 1464.  An ALJ is not obliged to credit medical opinions that are unsupported by the source's own data and/or contradicted by the opinions of other examining medical sources.  *Tommasetti*, 533 F.3d at 1041.  The ALJ properly found that Nurse Bariletti's opined sedentary work-restriction was inconsistent with her finding that the diagnosed left leg

venous insufficiency would only mildly or moderately limit Plaintiff.  Tr. 293.

This was a germane reason to discount Nurse Bariletti's opinion.

Finally, the ALJ rejected Nurse Bariletti's opinion because the longitudinal

record makes little mention of peripheral edema/arterial insufficiency causing such

severe physical limitations.  *See Batson*, 359 F.3d at 1195 (permitting an ALJ to

discredit a medical source's opinions that are unsupported by the record as a

whole).  The longitudinal record makes mention of only mild edema.  *See, e.g.*, Tr.

602 (July 26, 2013: no edema); Tr. 553 (November 25, 2014: "Mild pretibial

edema, R>L"); Tr. 551-52 (December 6, 2014: "Peripheral edema, probably due to

Gabapentin/varicose veins. Continue to use compression stalkings [sic]. Diuretics

if necessary"); Tr. 548 (February 20, 2015: no edema); Tr. 630 (February 24, 2015:

no edema); Tr. 653 (June 15, 2015: no edema).

Any error in the ALJ's analysis was harmless because the ALJ identified

other germane reasons to reject Nurse Bariletti's 2010 opinion.  *See Molina,* 674

F.3d at 1115.

b.  February 20, 2014 opinion

On February 20, 2014, Nurse Bariletti conducted a physical functional

evaluation of Plaintiff.  Tr. 437-41, 538-40.  Nurse Bariletti diagnosed Plaintiff

with several conditions, including diabetes mellitus/diabetic neuropathy,

depression, anxiety, and memory loss.  Tr. 441, 539.  Nurse Bariletti opined that

Plaintiff was moderately limited due to his diabetes mellitus, neuropathy, and memory loss and therefore limited Plaintiff to sedentary work. Tr. 539-40.

The ALJ assigned little to no weight to the opinion. Tr. 34. First, the ALJ discounted this opinion because the opined limitations were inconsistent with the objective symptoms and her observations. Tr. 34. The ALJ properly found that Nurse Bariletti's findings on the Physical Functional Evaluation were not consistent with her opined sedentary limitation. *See Tommasetti*, 533 F.3d at 1041 (9th Cir. 2008) (Incongruity between an opinion and treatment records or notes is a specific and legitimate reason to discount an opinion—a higher standard than the germane reason needed for an other source.); *Bray*, 554 F.3d at 1228 (finding that the ALJ may reject an opinion that is "brief, conclusory, and inadequately supported by clinical findings"). For instance, in regard to the musculoskeletal examination, Nurse Bariletti indicated, "[n]ormal range of motion, muscle strength, and stability in all extremities with no pain on inspection. Gait is normal." Tr. 440. And while Nurse Bariletti commented that Plaintiff had diabetes-mellitus neuropathy affecting his lower legs and feet bilat[eral], she noted in regard to Plaintiff's knees and feet, "no joint deformity, heat, swelling, erythema, or effusion. Full range of motion." *Id.* The incongruity between Nurse Bariletti's observations and opinions served as a germane basis for the ALJ to discredit her opinion.

Plaintiff submits that Nurse Bariletti's opined limitations were also based on Plaintiff's diagnosed memory loss. ECF No. 18 at 13. However, as the ALJ recognized, Nurse Bariletti's opined sedentary-work restriction was predicated on Plaintiff's diabetes mellitus and neuropathy—not memory loss. Tr. 34 (relying on Tr. 539). Plus, memory loss does not pertain to a sedentary-work restriction. 20 C.F.R. § 404.1567(a).

The ALJ provided germane reasons for discounting both of Nurse Bariletti's opinions.

### 4. Nurse Courtney Hunter

Nurse Hunter completed a medical form on November 25, 2014. Tr. 614-16. Nurse Hunter diagnosed Plaintiff, in part, with arterial insufficiency, neuralgia, obesity, and knee pain, noting that the knee pain was chronic since 2008 and that Plaintiff needed to elevate his legs 3-4 times per day for 15-20 minutes. Tr. 614. She opined that Plaintiff could perform less than sedentary work and would miss four or more days of work per month. Tr. 615.

The ALJ discounted Nurse Hunter's opinion. Tr. 35. An ALJ is required to provide a germane reason for discounting a nurse's opinion. *Dodrill*, 12 F.3d at 918.

First, the ALJ discounted Nurse Hunter's opinion because it was based solely on Plaintiff's self-reported limitations. Tr. 35. A medical source's opinion

may be rejected if it based on a claimant's subjective complaints which were properly discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 604. "[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, [this] is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. There are no objective medical findings in Nurse Hunter's clinical observations to support these opined severe physical limitations. Tr. 614-16. The ALJ properly concluded Nurse Hunter relied on Plaintiff's self-reports, which as discussed *infra*, were properly discounted. This was a germane reason to reject her assessed limitations.

Second, the ALJ rejected Nurse Hunter's opinion because she failed to explain why she opined that Plaintiff would miss work for four or more days per month. Tr. 35. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*, 554 at 1228. Because Nurse Hunter did not explain why Plaintiff would miss more than four days per month, this was a germane reason to discount her opinion.

The ALJ identified germane reasons for assigning little to no weight to Nurse Hunter's opinion that Plaintiff was limited to less than sedentary work.

ORDER - 29

**B. Plaintiff's Symptom Complaints**

Plaintiff contends the ALJ improperly evaluated his symptom complaints. ECF No. 18 at 16. An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective pain or symptoms.[5] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the

_____

[5] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' . . . [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). However, both regulations require an ALJ to consider the same factors in evaluating the intensity, persistence, and limiting effects of an individual's symptoms. *See id.* at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted). General findings are insufficient; rather, the ALJ must identify what symptom complaints are being discounted and what evidence undermines these complaints. *Id*. (citing *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted Plaintiff's symptom claims)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In evaluating Plaintiff's symptom complaints, the ALJ may consider, among other items, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59

This Court finds that the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not fully supported. Tr. 29-32.

### 1. Inconsistent with Medical Evidence Regarding Physical Impairments

The ALJ found that Plaintiff's subjective symptom complaints regarding his physical impairments were not supported by the medical evidence. Tr. 30. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. Medical evidence is a relevant factor, however, in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 416.929(c)(2). Minimal objective evidence is a factor that may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Regarding physical impairments, Plaintiff alleged that his knee pain and leg conditions caused significant pain and severely limited his ability to walk and stand. The ALJ found that x-rays of Plaintiff's knees showed mostly mild to moderate results, which would not physically limit or cause the pain to the extent complained of by Plaintiff. *See* Tr. 380 (January 27, 2012 x-ray finding mild

osteoarthritis of the bilateral knees, somewhat prominent enthesophyte inferiority of the right patella, and moderate-sized bilateral joint effusions); Tr. 460 (March 17, 2014 x-ray showing no acute facture or malignment but a small suprapatellar effusion, with treatment being ice and a knee immobilizer); Tr. 707 (September 22, 2015 x-ray of the right knee showing mild medial and moderate patellofemoral joint degenerative spurring); Tr. 708 (September 22, 2015 x-ray of the left knee showing a moderate spurring along the margin of the left patella, minimal spurring along the quadriceps tendon, and no evidence of joint effusion or further degenerative spurring, with the joint spaces preserved and condition unchanged since March 10, 2015). To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan*, 169 F.3d at 599-600. Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch*, 400 F.3d at 679. Here, the ALJ properly weighed the evidence and determined the x-ray findings and doctors' readings of them did not support Plaintiff's subjective symptom complaints. *See Hill*, 698 F.3d at 1158 (recognizing that courts will not disturb ALJ findings supported by substantial evidence).

The ALJ also found that Plaintiff's physical examinations did not substantiate Plaintiff's testimony about his leg pain and other symptoms. A determination that a claimant's complaints are "inconsistent with clinical

observations" can satisfy the clear and convincing requirement. *Regennitter v.*
*Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). *See, e.g.*, Tr.
369 ("normal gait" on October 14, 2011); Tr. 376 (normal gait on November 18,
2011); Tr. 305 (On April 3, 2012, Plaintiff complained of bilateral knee pain, even
when active for prolonged periods of time; pain improved with Naproxen; and
treated with ice at night and physical therapy); Tr. 513 (On January 16, 2014,
Plaintiff complained of pain in legs at night, which is relieved by walking; gait
normal); Tr. 440 (On February 20, 2014, Plaintiff complained of pain in his legs
but observed gait is normal with full range of motion in both knees); Tr. 551 (On
December 6, 2014, Plaintiff complained of sudden buckling at the right knee;
however, only small amount of edema observed over the right knee, and no
crepitus or patellar tenderness and the ligaments were strong). The ALJ reasonably
concluded that the physical examinations did not corroborate Plaintiff's subjective
symptom reports. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is
susceptible to more than one rational interpretation" the court will not reverse the
ALJ's decision.).

　　　　*2. Inconsistent with Medical Evidence Regarding Mental Impairments*

　　　　Similarly, the ALJ concluded that the medical evidence did not support the
severity of the mental impairments alleged by Plaintiff. The ALJ determined the
record supports Plaintiff's claim that he has depression, anxiety, and memory

ORDER - 34

issues but that these conditions do not impair him to such degree that he is unable to perform simple, routine tasks and follow short, simple instructions. Tr. 32. Here, the record contains a combination of positive and negative clinical findings and diagnostic imaging results regarding Plaintiff's depression and memory loss. Tr. 311 (normal mood); Tr. 369 (appropriate affect); Tr. 376 (appropriate affect); Tr. 422-29 (opining that Plaintiff showed severe overall memory deficits in all areas and that his memory abilities will likely continue to decline); Tr. 440-41 (noting that he is oriented to time, place, person, and situation, and assessing depression, anxiety, and memory loss); Tr. 461 (Plaintiff is alert and oriented to person, place, and time, with appropriate mood, rational thought process, normal perceptions, and ability to understand discharge instructions.); Tr. 637 (Plaintiff is orientated to time, place, person, and situation, with appropriate mood and affect.); Tr. 692, 699 (testing suggests mild Alzheimer's disease). However, the Court may not reverse the ALJ's decision based on Plaintiff's disagreement with the ALJ's interpretation of the record. *See Tommasetti*, 533 F.3d at 1038 ("[W]hen the evidence is susceptible to more than one rational interpretation" the court will not reverse the ALJ's decision). It is the ALJ's responsibility to resolve conflicts in the medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's interpretation of the record—that the record does not support Plaintiff's subjective complaints regarding his mental limitations—is reasonable.

ORDER - 35

### 3. Plaintiff's Efforts to Seek Work

The ALJ commented upon Plaintiff's efforts to look for work in 2011 and 2012. Tr. 31. Plaintiff's efforts to seek employment since the alleged disability onset date may be considered by the ALJ when evaluating Plaintiff's symptom complaints. *Bray*, 554 F.3d at 1227. This was a proper factor for the ALJ to consider when discounting Plaintiff's symptom complaints.

### 4. Daily Activities

Next, the ALJ found Plaintiff's daily activities were inconsistent with the level of impairment Plaintiff alleged. Tr. 30-31. A claimant's reported daily activities can form the basis for discounting a claimant's symptom complaints if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting. *Orn,* 495 F.3d at 639; *see also Fair*, 885 F.2d at 603 (recognizing that daily activities may be grounds for discounting a plaintiff's symptom complaints "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting"). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict

claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13 (internal

quotation marks and citations omitted).

Here, the ALJ noted that Plaintiff cared for his mother between 2007 and

2015. The ability to care for others without help has been considered an activity

that may undermine claims of totally disabling pain. *Rollins,* 261 F.3d at 857.

However, if the care activities are to serve as a basis for the ALJ to discredit the

Plaintiff's symptom claims, the record must identify the nature, scope, and

duration of the care involved and this care must be "hands on" rather than a "one-

off" care activity. *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

Here, Plaintiff cared for his wheelchair-bound mother on a daily basis until he

began caring for his daughter in 2015. Tr. 57 (testifying that Plaintiff cared for his

mother); Tr. 397 (noting that Plaintiff provides day-to-day care for mother); Tr.

422 (identifying that Plaintiff cares for his elderly mother who is in a wheelchair

and has dementia); Tr. 626 (noting that Plaintiff will move into an apartment with

his minor daughter in March 2015). When providing daily care for his mother,

Plaintiff cooked, performed light housekeeping, did the laundry, and helped his

mom to her bed and the bathroom. Tr. 235-42, 424, 534. The ALJ properly found that Plaintiff's daily activities did not support his subjective symptom complaints.

The ALJ provided clear and convincing reasons for rejecting Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms.

**C. Step Five: Identified Available Jobs**

Plaintiff contends the ALJ erroneously relied on the vocational expert's identified available jobs because the presented hypothetical failed to account for Plaintiff's physical and mental limitations. ECF No. 18 at 19-20. This argument is based entirely on the assumption that the ALJ erred in considering the medical opinion evidence, the other source evidence, and Plaintiff's symptom claims. For the reasons discussed in this decision, the ALJ's consideration of the record was legally sufficient and supported by substantial evidence. The ALJ did not err in assessing the residential functional capacity and finding Plaintiff capable of performing work existing in the national economy before December 25, 2015.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 18, is **DENIED**.

ORDER - 38

2. Defendant's Motion for Summary Judgment, ECF No. 19, is **GRANTED**.

3. **JUDGMENT** is to be entered in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED September 19, 2018.

<u>*s/Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 39